## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

ROY OORBEEK AND
RICHARD BERMAN,

               Plaintiffs,

   v.

FPL GROUP INC., H. JESSE ARNELLE,
SHERRY S. BARRAT, ROBERT M.
BEALL, II, JAMES L. BROADHEAD,
J. HYATT BROWN, ARMANDO M.
CODINA, DENNIS P. COYLE,
MARSHALL M. CRISER, B.F. DOLAN,
WILLARD D. DOVER, ALEXANDER W.
DREYFOOS, JR., PAUL J. EVANSON,
LEWIS HAY III, LAWRENCE
KELLEHER, DREW LEWIS, FREDERIC
V. MALEK, ARMANDO OLIVERA,
THOMAS F. PLUNKETT, ANTONIO
RODRIGUEZ PAUL R. TREGURTHA
and ROGER YOUNG,

               Defendants,

and

FPL GROUP, INC.,

               Nominal Defendant.

: CIVIL ACTION NO.

# 02-20170

## CIV - GOLD

MAGISTRATE JUDGE
SIMONTON



## VERIFIED COMPLAINT

Plaintiffs Roy Oorbeek, and Richard Berman ("plaintiffs"), by their undersigned counsel, allege the following in support of their Complaint against defendants H. Jesse Arnelle, Sherry S. Barrat, Robert M. Beall, II, James L. Broadhead, J. Hyatt Brown, Armando M. Codina, Dennis P. Coyle, Marshall M. Criser, B.F. Dolan, Willard D. Dover, Alexander W. Dreyfoos, Jr., Paul J.

Evanson, Lewis Hay III, Lawrence Kelleher, Drew Lewis, Frederic V. Malek, Armando Olivera, Thomas F. Plunkett, Antonio Rodriguez, Paul R. Tregurtha, and Roger Young, and nominal defendant FPL Group, Inc., ("FPL" or the "Company").

## Nature of the Action

1.      By way of this action, plaintiffs seek declaratory judgment and other relief and remedies, including but not limited to damages on behalf of nominal defendant FPL, because of defendants' wrongful conduct: a) in connection with the issuance of materially false and misleading proxy statements with respect to a Long Term Incentive Plan for highly compensated officers of FPL and its principal subsidiary, Florida Power and Light Company ("Florida Power & Light"); and b) in connection with payments made under that plan. In connection with such payments, defendants have committed corporate waste at the expense of the FPL and its shareholders.

## The Parties

2.      Plaintiffs, Roy Oorbeek and Richard Berman, have beneficially owned shares of the common stock of FPL at all relevant times.

3.      Defendant H. Jesse Arnelle ("Arnelle") has been a director of FPL since 1990. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

4.      Defendant Sherry S. Barrat ("Barrat") has been a director of FPL since 1998. She served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

5.      Defendant Robert M. Beall, II ("Beall") has been a director of FPL since 1989. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999

and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

6.      Defendant James L. Broadhead ("Broadhead") has been Chairman and Chief Executive officer of FPL since May 8, 1990. He recently resigned as Chief Executive officer. He is still Chairman and Chief Executive Officer of Florida Power & Light and has been a director of FPL from 1989 to 2001. He received $22,686,674 as a result of the change-of-control provisions. He served on the Board of Directors that approved the 1994 long-term incentive plan, the proposed merger and the issuance of the 1999 and 2000 proxy statements.

7.      Defendant J. Hyatt Brown ("Brown") has been a director of FPL since 1989. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

8.      Defendant Armando M. Codina ("Codina") has been a director of FPL since 1994. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

9.      Defendant Dennis P. Coyle ("Coyle"), has been General Counsel and Secretary of FPL Group since June 1, 1991. He received $6,349,587 as a result of the change of control provisions.

10.     Defendant Marshal M. Criser ("Criser") has been a director of FPL since 1989. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

11.     Defendant B.F. Dolan ("Dolan") has been a director of FPL since 1992. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

12.     Defendant Willard D. Dover ("Dover") has been a director of FPL since 1989. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

13.     Defendant Alexander W. Dreyfoos, Jr. ("Dreyfoos") has been a director of FPL since 1997. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

14.     Defendant Paul J. Evanson ("Evanson") has been President of Florida Power and Light and a director of FPL since 1995. From 1992 to 1995, Evanson was Vice President of Finance and Chief Financial Officer of FPL and Senior Vice President of Finance and Chief Financial Officer of FPL. He received $10,395,654 as a result of the change of control provisions.

15.     Defendant Lewis Hay, III ("Hay"), President of FPL Energy, received $6,696,320 as a result of the change of control provisions.

16.     Defendant Lawrence Kelleher ("Kelleher"), Vice President, Human Resources of FPL Group, received $6,204,490 as a result of the change of control provisions.

17.     Defendant Drew Lewis ("Lewis") has been a director of FPL since 1992. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

-4-

18.     Defendant Frederic V. Malek ("Malek") has been a director of FPL since 1987. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

19.     Defendant Armando Olivera ("Olivera"), Senior Vice-President of Power Systems of FPL, received $3,1511,518 as a result of the change of control provisions.

20.     Defendant Thomas F. Plunkett ("Plunkett"), President of the Nuclear Division of Florida Power & Light received $5,902,937 as a result of the change of control provisions.

21.     Defendant Antonio Rodriguez ("Rodriguez"), received $1,061,227 as a result of the change of control provisions.

22.     Defendant Paul R. Tregurtha ("Tregurtha") has been a director of FPL since 1989. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements. He was a member of the Compensation Committee that approved the long term compensation plan with change of control provisions.

23.     Defendant Roger Young ("Young") was President and a director of FPL starting in March 1999. He served on the Board of Directors that approved the proposed merger and the issuance of the 1999 and 2000 proxy statements.

24.     FPL is a public utility holding company, as defined in the Holding Company Act, incorporated and existing under the laws of the state of Florida, with its principal place of business at 700 Universe Boulevard, Juno Beach, Florida.

25.     Florida Power & Light, the principal subsidiary of FPL, maintains its principal place of business at 700 Universe Boulevard, Juno Beach, Florida.

-5-

## Jurisdiction and Venue

26.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because this action arises under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (the "1934 Act").

27.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because one or more of the defendants resides in this district, and because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district.

## I.    The Long Term Incentive Plans

28.    In 1994, the Board of Directors of FPL approved a Long-Term Incentive Plan (the "1994 Plan") to provide financial benefits to highly compensated employees (the "Covered Employees"), consisting of restricted stock, deferred stock and other stock-based awards, subject to performance-based criteria.  Defendants Beall, Broadhead, Brown, Criser, Dolan, Dover, Lewis, Malek, and Tregurtha were all on the Board at that time.

29.    The 1994 Plan makes all long-term incentive awards to Covered Employees payable upon a change of control.  The 1994 Plan, in relevant part, defines a "change of control" as

> [a]pproval by the shareholders of the Corporation of a reorganization, merger or consolidation, in each case, with respect to which all or substantially all of the individuals and entities who were the beneficial owners, respectively, of the Outstanding Corporation Common Stock and Outstanding Corporation Voting Securities immediately prior to such reorganization, merger or consolidation do not, following such reorganization, merger or consolidation, beneficially own, directly or indirectly, more than 75% of, respectively, the then outstanding shares of common stock and the combined voting power of the then outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such reorganization, merger or consolidation in substantially the same proportions as their ownership, immediately prior to such reorganization, merger or consolidation of the Outstanding Corporation Common Stock and Outstanding Corporation Voting Securities, as the case may be[.]

S-8 Registration Statement filed by FPL with the SEC on Feb. 13, 1995 at 20.

30.    On March 22, 1994, the Board of Directors of FPL issued a Definitive Proxy Statement (the "1994 Proxy Statement"), soliciting shareholder approval of the 1994 Plan.

31.    The 1994 Proxy Statement described the 1994 Plan as providing that a "change of control" would occur if "the Corporation's shareholders approve a merger, sale of assets or other similar transaction with respect to which the Corporation's shareholders **immediately before** the transaction **do not own** at least 75% of the voting securities of the corporation **resulting from** the transaction." 1994 Proxy Statement at 22 (emphasis added).

32.    Pursuant to the 1994 Proxy Statement, FPL's shareholders voted to approve the 1994 Plan.

33.    On March 29, 1999, the Board of Directors of FPL issued a Definitive Proxy Statement (the "1999 Proxy Statement") soliciting shareholder re-approval of the 1994 Plan, purportedly so that FPL could continue to enjoy tax deductions for executive compensation in excess of one million dollars ($1,000,000). See 1999 Proxy Statement at 8.

34.    The shareholders voted to approve the 1999 Plan. (The 1994 and 1999 Plans are referred to collectively as the "Plan").

35.    When the 1999 Proxy Statement was issued, two director/officers, defendants Broadhead and Evanson, qualified as Covered Employees under the Plan. Several non-director officers also qualified under the Plan, specifically defendants Coyle, Hay, Kelleher, Olivera, Plunkett and Rodriguez.

36.    In July, 2000, FPL and Entergy Corporation ("Entergy") announced a proposed merger of the two companies.

37.   In November 2000, the boards of directors of FPL and Entergy issued a joint proxy statement and registration statement (the "2000 Proxy Statement"), soliciting shareholder approval of the proposed merger.  The 2000 Proxy Statement provided:

> [u]pon approval of the merger by FPL Group's shareholders, all performance criteria of performance-based awards, restricted stock and other stock-based awards held by the eight executive officers named in this section under FPL Group's 1994 Long-Term Incentive Plan shall be deemed fully achieved and all such awards shall be fully earned and vested, all options and other exercisable rights shall become exercisable and vested, the restrictions, deferral limitations and forfeiture conditions applicable to any other awards shall lapse and such awards shall be fully vested and, in general, all outstanding awards will be cancelled and the holder thereof paid in cash therefor. . .

S-4/A Registration Statement filed by WCB Holding Corp. at 66.

38.   At the issuance of the 2000 Proxy Statement, two director/officers, defendants Broadhead and Evanson, qualified as Covered Employees under the Plan.  Several non-director officers also qualified under the Plan, specifically defendants Coyle, Hay, Kelleher, Olivera, Plunkett and Rodriguez.

39.   FPL's shareholders voted to approve the merger in December 2000.

40.   FPL and Entergy mutually terminated the merger agreement on or about April 1, 2001.

41.   Despite the termination of the Entergy merger, FPL paid more than $53 million to Covered Employees pursuant to the Plan, including $22,686,674 to defendant Broadhead; $10,395,654 to defendant Evanson; $6,696,320 to defendant Hay, $6,349,587 to defendant Coyle, and $5,902,937 to defendant Plunkett.

42.     Neither the 1999 or 2000 Proxy Statements, nor the Plan, stated that Covered Employees would retain payments made under the Plan if the proposed reorganization, merger, or consolidation, including the proposed merger with Entergy, was not consummated.

43.     Neither the 1999 or 2000 Proxy Statements, nor the Plan, required Covered Employees to continue employment with FPL and its subsidiaries to retain payments made under the Plan.

44.     The Company's net earnings were decreased by $41 million and its earnings per share by $0.24 as a result of the expenses of the failed merger, most of which resulted from the change of control payments.  See FPL Group Inc.10K, filed 3/8/2001.

45.     On April 11, 2001, FPL filed a Definitive Proxy Statement, stating that "some of the payments to [the Covered Employees] under [the Plan] that resulted from the change of control that occurred as a result of the approval by the [FPL's] shareholders of a proposed merger with Entergy Corporation may not be deductible by [FPL] for federal income tax purposes."  2001 Proxy Statement at 12.

46.     Upon information and belief, defendant Broadhead resigned from FPL during 2001, after FPL and Entergy abandoned the proposed merger.

## II.     The Plans Did Not Authorize the Payments Made

47.     During December, 2000, despite the possibility of termination of the Entergy merger, FPL paid more than $53 million to defendants Broadhead, Coyle, Hay, Kelleher, Evanson, Olivera, Plunkett and Rodriguez (collectively, the "executive defendants"), purportedly pursuant to the Plan.

48.     The executive defendants have retained these payments despite the failure of the Entergy merger.

49.     These payments were unauthorized, and therefore <u>ultra vires</u>, because the1994 and 1999 Plans as approved by the shareholders required actual consummation of the reorganization, merger or consolidation at issue – in this case, the Entergy merger – following the approval of the shareholders.

50.     As quoted above in paragraph 31, the Plan can be read only to require either actual consummation of the transaction as a condition to payments under the Plan or return of the payments if the transaction failed.  Specifically, the terms of the Plan make it clear that Plan payments may be made only if consummation actually occurs, or must be refunded if the transaction fails.

51.     Under the Plan, payments may be made only in the event of a "change of control". A "change of control" requires "[a]pproval by the shareholders of the Corporation of a . . . merger" where "the individuals and entities who <u>were</u> the beneficial owners . . . <u>immediately prior</u> to such . . . merger . . . do not, <u>following</u> such . . . merger . . . beneficially own . . . more than 75% of . . . the <u>then</u> outstanding common stock and voting power of the Corporation <u>resulting from</u> such . . . merger." (Emphasis added).

## III.     <u>The 1999 and 2000 Proxy Statements Materially Misled Investors</u>

52.     The 1999 Proxy Statement and the 2000 Proxy Statement each materially misled the shareholders.

53.     The 1999 Proxy Statement omitted a plain statement of the material fact that Covered Employees would receive and retain the payments made under the change of control provision in the Plan even if the reorganization, merger, or consolidation that the shareholders approved was never consummated.

-10-

54.     The omission in the 1999 Proxy Statement of a plain statement discussing the consequences of a failed reorganization, merger, or consolidation materially misled shareholders into believing that the payments would be retained only upon an actual change of control of FPL.

55.     The 2000 Proxy Statement omitted a plain statement of the material fact that, provided the shareholders approved the merger, Covered Employees would receive and retain the payments made under the change of control provision of the Plan even if the merger with Entergy was never consummated.

56.     The omission in the 2000 Proxy Statement of a plain statement discussing the consequences of a failed merger materially misled shareholders into believing that the payments would be retained only upon an actual change of control of FPL.

57.     In addition, the 1999 Proxy Statement and the 2000 Proxy Statement each materially misled the shareholders with respect to tax consequences, specifically the deductibility of payments under the Plan.

58.     The 1999 Proxy Statement stated that the Company was seeking re-approval of the Plan to satisfy the shareholder approval requirements of Section 162(m) of the Internal Revenue Code (the "IRC"). According to the 1999 Proxy Statement:

> If such [shareholder] re-approvals are not obtained, the Corporation will lose the federal income tax deduction for compensation in excess of $1 million paid to any of the Covered Officers. This would result in higher income tax liability for the Corporation and a corresponding decrease in net income. (Emphasis added).

59.     The 1999 Proxy Statement identified no further or additional risk with respect to the deductibility of payments under the Plans, apart from the risk of non-deductibility "[i]f such [shareholder] re-approvals are not obtained."

60.   The 1999 Proxy Statement omitted the following material facts:

(i)   The 1999 Proxy Statement failed to disclose that Section 162(m) disallows deduction of a substantial portion of any compensation paid under the Plans if the payments are made on a change of control but <u>before</u> the Plans' performance goals are satisfied.

(ii)   The 1999 Proxy Statement failed to disclose that, under Section 280G of the IRC, deductibility of compensation paid pursuant to a change in control is disallowed where the compensation paid exceeds 2.99 times the executive's annual compensation.

(iii)   The 1999 Proxy Statement failed to disclose that the IRS can disallow a deduction if the amount of compensation paid is determined to be "unreasonable" based on all the facts and circumstances.

61.   The 2000 Proxy Statement made the same material omissions with respect to deductibility of Plan payments, as described above.

62.   By failing to disclose each of the foregoing items, the 1999 and 2000 Proxy Statements omitted material risks with respect to the deductibility of the Plan payments. The loss as a result of this undisclosed risk, arising from the non-deductibility of the payments of more than $53 million made pursuant to the Plans, could be as much as $17.5 million.

63.   The payments were <u>ultra</u> <u>vires</u>, because the 1999 and 2000 shareholder votes were null and void because of the misrepresentations in the proxy statements.

## COUNT I

**Claim Asserted by Both Plaintiffs for Violation of Section 14(a)**
**<u>By Issuing False and Misleading Proxy Statements</u>**

64.   Plaintiffs reallege and incorporate by reference paragraphs 1 - 62 above.

-12-

65.     Under the Rules promulgated by the SEC pursuant to 15.U.S.C. § 781 of the 1934 Exchange Act, it is unlawful to solicit by any proxy statement, that "at the time and under the circumstances under which it was made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

66.     As explained above, the 1999 Proxy Statement is false and misleading because it fails to explain that change of control payments may be made to high level executives when shareholders vote in favor of a merger, even if there is no merger, and thus, no damage to such executives and no benefit to FPL from the payments. Indeed, the 1999 Proxy Statement creates the materially false and misleading impression that change of control payments will be retained by the executives only if an actual merger is consummated.

67.     The 1999 Proxy Statement is false and misleading because it fails to explain that, under Sections 162(m) and 280(G) of the IRC, some change of control payments may not be tax-deductible. Indeed, the 1999 Proxy Statement creates the materially false and misleading impression that all such payments will be tax-deductible.

68.     The 2000 Proxy Statement is materially false and misleading because it fails to explain that the Company will make change of control payments after the vote of the stockholders, and that the recipients of those payments will retain them regardless of whether the proposed merger is consummated.

69.     The 2000 Proxy Statement is materially false and misleading because it omits the language in the change of control provision that makes it clear that the executives will not get the change of control payments unless there is a merger, or that the executives will return the change of control payments if the merger is not consummated.

-13-

70.     The 2000 Proxy Statement is false and misleading because it omits material facts with respect to the risk of lack of deductibility of the change of control payments.

71.     Defendants have deprived plaintiffs of their right to an informed vote on the ratification of the change of control provisions in 1999, and the approval of the merger in 2000, by omitting or misrepresenting material facts that were required in order to make the 1999 and 2000 Proxy Statements not misleading.

**WHEREFORE**, plaintiffs demand that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declare the 1999 vote in favor of the change of control provisions null and void; declare the 2000 vote in favor of the merger null and void; and, order the executive defendants to return those payments to FPL; order defendants to pay compensatory damages, costs and attorney's fees to plaintiffs and grant such other relief as this Court deems just and proper.

## COUNT II

### Derivative Claim Against All Defendants Except FPL Group, Inc.
### for Violation of Section 14(a) by Issuing False and Misleading
### Proxy Statements

72.     Plaintiffs reallege and incorporate by reference paragraphs 1-71 above.

73.     Plaintiffs bring this count derivatively on behalf of the nominal defendant, FPL.

74.     Plaintiffs did not make a demand on the members of the Board of Directors of FPL ("Board of Directors defendants") because such demand would have been futile.

75.     It would have been futile because Broadhead so dominated the Board that the Board members were incapable of making on independent decision.

-14-

76.    It would have been futile because the votes by the Board of Director defendants in favor of both the 1999 and 2000 Proxy Statements were not the product of a valid exercise of business judgment, for the following reasons:

a.    Every board member who read the 1999 and 2000 Proxy Statements with due care would have realized that $50 million or more of change of control payments would be paid to executives, who, if there were no merger, would receive substantial payments without suffering any damages incident to an actual merger, and without any benefit to FPL.

b.    As stewards of the company, every board member should have inquired if the payments were tax-deductible, and should have made sure that the proxy statements fully disclosed the risks of non-deductibility.

77.    The material omissions in the 1999 and 2000 proxy statements outlined above made those statements false and misleading.

78.    FPL and it stockholders suffered material losses because of the payments FPL made pursuant to the change of control provisions in the absence of an actual merger, and may suffer additional material losses if the payments prove to be non-deductible.  Such payments constituted corporate waste.

**WHEREFORE,** plaintiffs, on behalf of FPL, demand that this Court, pursuant to 28 U.S.C. §2201, declare the 1999 and 2000 votes null and void; order the executive defendants to return the change of control payments to FPL; order defendants to pay compensatory damages; order defendants to pay costs and attorney's fees to plaintiffs; and grant such other relief as this Court deems just and proper.

## COUNT III

### Derivative Claim Against All Defendants Except FPL Group, Inc. for Corporate Waste Under Florida Statute

79.     Plaintiffs reallege and incorporate by reference paragraph 1-78 above.

80.     Plaintiffs bring this count derivatively on behalf of the nominal defendant, FPL.

81.     Under Section 607.0830 of the Florida Statutes, the directors had a duty to FPL to act in good faith, "with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he or she reasonably believes to be in the best interests of the corporation."

82.     Plaintiffs have made no demand on the Board of Directors of FPL because such a demand would have been futile, as explained above.

83.     The Board of Directors defendants have committed corporate waste by approving the materially false and misleading 1999 and 2000 Proxy Statements; by causing the Company to make the change of control payments to the executive defendants, which payments were ultra vires because the shareholder votes were invalid; and by failing to require that payments be repaid to the Company, with interest.

84.     The Board of Directors defendants have allowed FPL to make payments to the executive defendants pursuant to the change of control provisions that were unreasonably disproportionate to any benefit to the Company, and were made even when the executive defendants suffered no damage from the merger because the merger never took place.

85.     The Board of Directors defendants have allowed FPL to make compensation payments to the executive defendants that were not tax deductible.

86.     The Board of Directors defendants have allowed FPL to make payments which were disproportionate to the services rendered.

**WHEREFORE,** plaintiffs demand that this Court order that defendants return to FPL the amounts of the payments made pursuant to the change of control provisions; pay compensatory damages; pay plaintiffs' expenses and attorney's fees; and grant such other relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable as of right by a jury.

DATED: _January 15, 2002_

DUANE MORRIS LLP
Attorneys for Plaintiff
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: (305) 960-2200 • Facsimile:(305) 960-2201
E-mail: HWGurland@duanemorris.com

OF COUNSEL:
Michael M. Baylson
Sandra A. Jeskie
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396
(215) 979-1150; 1395

By:_____
Harvey W. Gurland, Jr.
Florida Bar No. 284033

David Berger
Todd Collins
Elizabeth W. Fox
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Counsel for Plaintiffs

MIA\79533.1

-17-

## AFFIDAVIT OF RICHARD E. BERMAN

**Richard E. Berman**, being duly sworn, deposes and says,

I am the Plaintiff in the foregoing Complaint. The allegations in the Complaint are true

to the best of my knowledge, information, and belief, based on the documents referred to in the

Complaint, and the investigation of counsel.

_____
Richard E. Berman, Plaintiff

Sworn to and subscribed
this 1f day of January, 2002.

_____
Notary Public
State of Florida

LYDIA N. DELLATTO
MY COMMISSION # CC 970049
EXPIRES: November 19, 2004
Bonded Thru Notary Public Underwriters

'S 44
Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

ROY OORBEEK AND RICHARD BERMAN

**DEFENDANTS**

FPL GROUP, INC., H. JESSE ARNELLE, et al.

**02-20170**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

GOLD

1:02 CV 20170 SIMONTON

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Harvey W. Gurland, Jr., Duane Morris LLP, 200
So. Biscayne Blvd., #3410, Miami, FL (305) 960-2200

ATTORNEYS (IF KNOWN)

**CIV - GOLD**   MAGISTRATE JUDGE
SIMONTON

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury – Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers Liability | | B☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☒ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 690 Other | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ 50,000,000+

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   January 15, 2002

SIGNATURE OF ATTORNEY OF RECORD   Harvey W. Gurland

FOR OFFICE USE ONLY

RECEIPT # 85795   AMOUNT 11000   APPLYING IFP 1/15/02   JUDGE _____   MAG. JUDGE _____